## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

THOMAS J. BRYA,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　Case No. 1: 25-cv-06481
　　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　Judge Sharon Johnson Coleman
PFIZER INC., et al.,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　　　　　)

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas J. Brya ("Brya") filed suit against Defendants Pfizer Inc. ("Pfizer"), the Pfizer Consolidated Pension Plan (the "Consolidated Pension Plan"), the Pfizer Retirement Committee ("Retirement Committee"), one of the Retirement Committee members, Lisa Marie Misertino ("Misertino"), and Fidelity Workplace Services LLC ("Fidelity") (collectively "Defendants") alleging numerous violations of the Employment Retirement Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"). Brya's claims alleged: (1) a breach of fiduciary duty claim for Defendants' failure to provide accurate and comprehensive plan communications and for denying his pension claims without addressing substantive factual and legal considerations; (2) a claim for self-dealing and fraudulent nondisclosure stemming from Defendants' use of administrative processes to deter participants from obtaining benefits; (3) violation of claims procedure for failing to provide Brya with a full and fair review on his benefits claim; (4) incorrect calculations and denial of pension benefits, (5) a claim for fiduciary misconduct against Misertino for transacting for her own benefit; (6) and a claim for breach of co-fiduciary duties against all Defendants. Currently before the Court is Defendants' Motion to Dismiss Brya's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court grants Defendants' Motion [28].

1

**BACKGROUND**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Unless otherwise noted, the following factual allegations are taken from Brya's Amended Complaint, (hereinafter, "Complaint") (Dkt. 7), and are assumed true for purposes of this Motion. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

## A. Brya's Employment History

Brya worked for G.D. Searle & Co. ("Searle") starting in 1988, which at the time was a wholly owned subsidiary of Monsanto Company ("Monsanto"). In April 2000, Brya then became employed at Pharmacia & Upjohn ("Pharmacia") following Pharmacia's acquisition of Monsanto. In April 2003, Pfizer acquired Pharmacia where Brya was employed for approximately one month prior to his voluntary termination. While employed at Searle, Monsanto, Pharmacia, and Pfizer, Brya participated in each company's retirement plans, all of which are governed by ERISA.

## B. Monsanto, Searle, and Pharmacia Benefit Plans

Prior to January 1, 1997, Monsanto had a "defined benefit plan" known as the Monsanto Company Pension Plan (the "Monsanto Plan"). Employees of Searle, a wholly owned subsidiary of Monsanto, were participants in the Monsanto Plan but also beneficiaries of several unique features in Searle-specific components of the Monsanto Plan.

Effective January 1, 1997, Monsanto and its subsidiary Searle converted the employees' pension plan from a conventional defined benefit plan in which retirement benefits equal a specified percentage of a participant's salary in the final years of employment to a cash balance plan in which the normal retirement benefit is based upon a hypothetical account balance. As a result of the conversion, the accrued benefits under the Searle Plan were merged into the Monsanto Pension Plan

2

in a separate account called the Prior Plan Account ("PPA"). The opening balance of the PPA was calculated by Monsanto in 1997 through the use of a formula set forth in the Monsanto Pension Plan. From 1997 to December 31, 2001, Brya was a participant in the Searle cash balance pension plan and also accrued benefits under the terms of Monsanto's cash balance plan.

In or around April of 2000, upon the formal completion of a merger between Monsanto and Pharmacia, Brya was appointed as Vice President of Therapeutic Licensing at Pharmacia. After the merger the Monsanto Pension Plan was spun off to the Pharmacia Cash Balance Pension Plan (the "Cash Balance Plan") effective January 1, 2002. Brya participated in the Cash Balance Plan (the from mid-2002 through May 4, 2003. Brya asserts, without substantiation, that as part of his negotiations for employment with Pharmacia, Brya secured terms ensuring that his periods of pensionable service with Searle/Monsanto would be recognized and credited under the new Cash Balance Plan.

### C. Pfizer Acquisition and Release

On April 16, 2003, Pfizer acquired Pharmacia. Soon thereafter, in June of 2003, Pfizer terminated Brya's employment, providing him with $427,230.16 in severance benefits in exchange for signing a "Release Agreement," forsaking any claims he might have had against Pfizer at the time. The express terms of the agreement state:

> In consideration of and in exchange for the severance payment … and for other good and valuable consideration, I, by signing this Release Agreement, for myself, my heirs, administrators, executors and assigns, **agree to release and forever discharge Pfizer Inc and Pharmacia Corporation**, their subsidiaries, affiliated companies, successors and assigns, and their current and former employees, agents, officers, and directors from any and all claims … **this includes, without limitations, claims [under]… the Employee Retirement Income Security Act.**

(Dkt. 1 at *52) (**emphasis added**).

### D. *Walker* Class Action

In June of 2004, Grant M. Walker filed a putative class action complaint against Pfizer, Monsanto, the Monsanto Company Pension Plan, Pharmacia, and the Pharmacia Cash Balance

3

Pension Plan, among other defendants, alleging that the elimination of a 8.5% Restoration Credit when participants reach age 55 pursuant to Section 6.2(d) of the Monsanto Pension Plan – the provision at issue in Brya's present claims – violated ERISA's prohibition on ceasing or reducing an employee's benefit accrual because of the attainment of any age. *See Walker v. Monsanto Co. Pension Plan*, 636 F. Supp. 2d 774, 778 (S.D. Ill. 2009). The Southern District of Illinois certified four classes in 2008. One of the classes, all former vested Monsanto Plan participants (and their beneficiaries) with PPAs who terminated employment on or after September 1, 2000, included Brya.

In its decision, the district court determined that the cessation of "interest credits" at age 55 is not forbidden by ERISA's prohibition of cessation of "benefit accrual" because "interest credits" under the Plan are not "benefit accruals." *Walker*, 636 F. Supp. 2d at 780 . A "benefit accrual" is "what the employer puts in" to increase the value of a participant's retirement benefit. *Id.* (citing *Cooper v. IBM Pers. Pension Plan*, 457 F.3d 636, 639 (7th Cir.2006)). By contrast, the PPA interest credits did not increase the value of the participants' retirement benefit, but instead, accounted for an provision allowing individuals to retire prior to age 55, discounting their full benefit by 8.5% for every year they retired prior to 55. *See id.* In an example, the district court explained, where an employee retired at age 54, a year prior to their eligibility for the full retirement benefit, an employee would be entitled their full retirement reduced by 8.5%; if an employee retired at 53, two years prior to their eligibility for the full retirement benefit, that benefit was reduced another 8.5%. *See id.* at 781. What the plaintiffs in *Walker* believed was an "increase" in their benefits year after year, was just a restoration of the pre-calculated 8.5% lump sum employees were given each year when they did not retire early. The credit stopped at 55 because, at that point, employees were entitled to their full retirement benefit, without any 8.5% discounts. *See id.* The Seventh Circuit, affirming that decision, explained that this cessation did not improperly reduce each employee's benefit accrual based on age, but instead, based on the express terms of the Monsanto Pension Plan, the Restoration Credits were created to actually

4

restore benefits up to the point that employees were eligible for their full benefit. *See Walker v. Monsanto*, 614 F.3d 415, 417 (7th Cir. 2010).

Relevant here, Brya's Restoration Credits ceased when he reached age 55 in 2024. Section 6.2(d) of the Monsanto Pension Plan dictated this cessation—the same plan the Seventh Circuit determined was not in violation of ERISA.

### E. Brya's Administrative Appeal and Present Claims

After electing and receiving a total of $548,514.14 in pension benefits in 2023, Brya submitted a claim challenging the total amount distributed pursuant to the Consolidated Pension Plan's claim and appeals procedures. In his initial claim, Brya argued that his PPA balance should have been calculated using Social Security earnings, instead of the wage statements issued during his employment, that he should have continued receiving the 8.5% Restoration Credit after he turned 55, and that he should have received additional service credit in connection with the calculation of his Cash Balance Plan benefit pursuant to an agreement with his prior employer.

Pfizer responded to Brya's initial claim on February 16, 2024 (the "Claim Denial Letter") concluding that Brya's claims conflicted with the Plan's terms. Brya appealed the initial denial (the "Appeal") where he reiterated that his Social Security earnings statements should have been used to calculate his initial balance in 1997, the Restoration Credits should have been continued after he turned 55, and that he was promised an additional lump sum based on additional service credits prior to Pharmacia's acquisition of Monsanto/Searle. The Retirement Committee upheld the decision to deny Brya's claims for additional benefits on June 14, 2024 (the "Appeal Denial Letter")

After his unsuccessful administrative appeal, Brya filed the present suit, alleging that Defendants "have engaged in administrative malfeasance by systematically denying specific pension benefits without adequately addressing Brya's substantiated factual assertions and legal arguments." Brya alleges numerous fiduciary duty claims and asserts that he is entitled to 9 years of lost investments

5

after Pfizer ceased his Restoration Credits at 55. In response, Pfizer filed the present Motion to Dismiss all Brya's claims.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, a court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While pro se complaints are construed liberally and held to a less stringent standard than pleadings drafted by lawyers, *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011), a pro se complaint still must provide fair notice of the plaintiff's claims and at least suggest a plausible right to relief. *Killebrew v. St. Vincent Health, Inc.*, 295 Fed. App'x 808, 810 (7th Cir. 2008).

**DISCUSSION**

In its Motion, Pfizer argues Brya's claims should be dismissed because they are extinguished by ERISA's statute of repose, 29 U.S.C. § 1113(1), because his claims were litigated to conclusion in *Walker*, 636 F. Supp. 2d at 779-785, *Walker Appeal*, 614 F.3d 415, cert. denied, 562 U.S. 1286 (2011), and because Pfizer paid Brya $427,230.16 in severance benefits for a full release of any and all claims against Pfizer. *See* (Dkt. 29 at *1-2). The Court addresses each argument in turn.

**I. ERISA's Statute of Repose**

ERISA contains a six-year statute of repose for fiduciary and related claims. *See* 29 U.S.C. § 1113(1). The Supreme Court has explained that section 1113(1) is "a statute of repose, which 'effect[s] a legislative judgment that a defendant should be free from liability after the legislatively determined period of time.'" *Intel Corp. Inv. Pol'y Comm.*, 589 U.S. 178, 180-81 (2020). The six-year period "starts

6

running not when the claim accrues, but on 'the date of the last culpable act or omission of the defendant.'" *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 99 F.4th 928, 950 (7th Cir. 2024). This statute of repose can be tolled in the instance of fraud or concealment, which an ERISA fiduciary commits when it delays a wronged beneficiary's discovery of their claim either by misrepresenting the significance of facts the beneficiary is aware of (fraud) or by hiding facts so that the beneficiary does not become aware of them (concealment)." *Laskin v. Siegel*, 728 F.3d 731, 735 (7th Cir.2013).

Pfizer asserts that all of Brya's claims are barred by ERISA's statute of repose because they are premised on the underlying alleged miscalculation of his initial cash balance, a singular act that took place in 1997, and the cessation of the 8.5% Restoration Credits, a singular act that took place in 2014. (Dkt. 29 at *8). Pfizer further argues that it is inconsequential that the fiduciary duty counts purport to attack the Retirement Committee's actions with respect to the claim and appeal, because the graveman of those Counts (and Brya's claim and appeal) are the underlying claims on the merits: that the initial cash balance was miscalculated in 1997 and that the Restoration Credits should not have ended in 2014. (*Id.*) Accordingly, they argue, his claims are untimely. Brya, in response, argues that the six-year period of repose began to run from the "last culpable act," which includes the ongoing failure to cure breaches during the Administrative Process and the June 14, 2024, final denial letter that disclosed to Brya, for the first time, the determination in the *Walker* case. (Dkt. 41 at *12). Specifically, because Pfizer "concealed" the *Walker* decision for "decades," Brya argues the statute of repose was further tolled by the fraud and concealment exception. (*Id.* at 12-13.)

The Court is unconvinced by Brya's arguments. Brya does not dispute that the facts underlying the Miscalculation Claim and the Cessation Claim accrued in 1997 and 2014, respectively—more than six years before he filed this lawsuit. Instead, Brya makes conclusory allegations of fraud and concealment in his administrative process in an effort to toll ERISA's statute of repose. Brya has not

met his burden to allege "some trick or contrivance intended to exclude suspicion and prevent inquiry," a prerequisite for such tolling. *See Appvion*, 99 F.4th at 941 (7th Cir. 2024). As the Seventh Circuit explains, "fraud claims do not receive the benefit of ERISA's six-year statute of limitations simply because they are fraud claims," a plaintiff must allege "actual concealment," with particularity, which he cannot. *See id.* Crucial to the Court's determination that Brya has not sufficiently alleged fraud or concealment is the fact that Brya undisputedly knew about the changes to his pension plan (which gave rise to the Miscalculation and Cessation Claims) long before filing suit. As to the miscalculation claim, Brya was notified of re-calculated pension benefits, pursuant to the 1997 Monsanto Plan restructuring, during his employment with Searle. Brya was also aware that the Restoration Credits ceased when he turned 55, evidenced by his own admission that he called Fidelity to investigate the cessation in 2014. Complaint, ¶¶ 39-41. Finally, Brya's attempt to characterize his 2023 administrative claim and 2024 appeal as "last culpable acts," is unavailing since the underlying merits of his claim and appeal are premised on the same 1997 recalculation and 2014 cessation of his Restoration Credits.

Brya has not pointed to any steps "steps taken by [the Committee] to cover their tracks" or "to hide the fact of the breach." Because his own pleadings confirm he was aware of the alleged breaches in 1997 and 2014, the fraud or concealment exception to ERISA's statute of repose does not apply. *See Urlaub v. CITGO Petroleum Corp.*, 750 F. Supp. 3d 863, 873–74 (N.D. Ill. 2024) (Kennelly, J.)(holding the same). Accordingly, the Court dismisses Brya's claims as untimely.

## II.     Effect of the Ruling in *Walker v. Monsanto*

While Brya's claims are independently extinguished by ERISA's statute of repose, for the benefit of the *pro se* complainant, the Court will address the other dispositive defenses to his claims.

Under res judicata, also known as claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised

8

in that action." *Savory v. Cannon*, 947 F.3d 409, 419 (7th Cir. 2020). Under collateral estoppel, also known as issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Id.*

Pfizer argues Brya's cessation claim, pursuant to Section 6.2(d) of the Monsanto Pension Plan, was fully and fairly litigated on a class-wide basis, resulting in a final judgment that the complained-of cessation of Restoration Credits does not violate ERISA(or any other applicable law). *Walker*, 636 F. Supp. 2d at 779-785, *Walker Appeal*, 614 F.3d at 420-21. (Dkt. 29 at *10). Accordingly, Pfizer argues, Brya's claims to the contrary are either barred by res judicata or collateral estoppel, are implausible, and should be dismissed with prejudice. *Id.* Pfizer argues, since judgment was entered against plaintiffs in *Walker*—a case involving the identical plan and specific provisions at issue here—there is no dispute that the alleged ERISA violation related to the Restoration Credits has already been litigated and that the resulting judgment has preclusive effect. (*Id.* at *11) (citing *Simon v. Allstate Emple. Grp. Med. Plan*, 263 F.3d 656, 658 (7th Cir. 2001) (affirming dismissal, on res judicata grounds, *of pro se* plaintiff's ERISA claims that were "decided on the merits in a previous suit involving the same parties or their privies.")). That Brya was unaware of and not notified about the *Walker* class action, Pfizer argues, does not mean he was not in privity with the plaintiffs since cases like *Walker*, certified under Rule 23(b)(1) and Rule 23(b)(2), do not require that all absent class members be notified of the action. (Dkt. 29 at *11). Finally, Pfizer concludes, even if the Court finds that res judicata and/or collateral estoppel do not apply to bar Brya's claims, the Seventh Circuit confirmed the legality of the Restoration Credits ceasing at age 55. Thus, it is clear that Brya cannot plausibly allege now that the cessation violates ERISA. (*Id.* at *12.)

Brya, in response, argues that Pfizer seeks to improperly introduce "extrinsic, speculative new facts," through the *Walker* case, to erroneously assert that he was a member of a certified class. (Dkt.

9

41 at *8.) While Brya concedes Rule 23(b)(1) and (b)(2) do not have notice or opt-out requirements, Brya believes the Court should analyze whether "Constitutional or due process concerns are implicated by the absence of notice or opportunity to participate, particularly for individualized monetary relief." (*Id.* at *13.) Brya argues his claims remain viable for three, relevant reasons: first, at the time of the *Walker* decision, Brya was only 51 years of age and had not sustained any compensable damage, meaning he lacked the requisite standing to be a party to that litigation; second, because *Walker* was certified as a Rule 23(b)(2) class action, a vehicle the Supreme Court has held is generally inappropriate for the individualized monetary relief sought here; and finally, because binding Brya "to a judgment in which [he was] not adequately represented—and in which [his] specific legal interests were not litigated—would constitute a direct violation of his due process rights. (Dkt. 41 at *14.)

Despite Brya's assertions, his claims are precluded by *Walker* and Pfizer was not required to provide him with notice. Dismissal under Rule 12(b)(6) is appropriate when a defendant raises *res judicata* as an affirmative defense and when it is 'clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law. *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). Here, each of these requirements is met. As an initial matter, Brya is incorrect that the *Walker* decision is "improper" or "extrinsic evidence." Beyond the Court's ability to take judicial notice of other court's decisions, *see Parungao v. Cmty. Health Sys.*, 858 F.3d 452, 457 (7th Cir. 2017), this Court is bound by decisions of the Seventh Circuit and **mus**t rule in accordance with the *Walker* decision. In *Walker*, the Seventh Circuit adjudicated Brya's cessation claim based on the very same issue under the same plan provision. *Walker Appeal*, 614 F.3d at 417. In *Walker*, the Court determined that cessation of the PPA "interest credits" at age 55 did not violate ERISA, barring Brya's current assertions as a matter of law. Brya's claims that his due process rights were violated because he was not notified of *Walker*, also fail. In contrast to Rule 23(b)(3), Rule 23(b)(1) and 23(b)(2) do not require that potential class members be notified of

the class action or that they be afforded an opportunity to opt out of the class. See, e.g., *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir.2005); *see Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011) (Pallmeyer, J.)(holding the same).

Accordingly, the Court independently dismisses Brya's claims on *res judicata* and collateral estoppel grounds.

### III. Effect of Severance and Release

Finally, the Court addresses the effect of the 2003 release Brya signed in exchange for Pfizer's lump-sum severance payment. The agreement between Brya and Pfizer is governed by the "laws of the State of New York." (Dkt. 29-1 at *26.) Generally, under New York and federal common law governing contracts "an employee who obtains extra severance benefits in exchange for a release in favor of the employer must tender the extra benefits back to the employer as a condition precedent to challenging the validity of the release. *See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 436-437, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998). The Second Circuit has observed "[i]n order to avoid a finding of ratification where consideration has been paid, it is essential that the releasor tender back the sum received. *See e.g. Brown v. City of S. Burlington, Vt.*, 393 F.3d 337, 344 (2d Cir. 2004) (finding ratification of the release of all claims based on plaintiff's failure to tender back the consideration received in a timely manner).

Pfizer emphasizes that Brya cannot maintain his miscalculation claim since he has not taken any steps to account for the $427,230.16 he received in exchange for release of his claims against Pfizer. (Dkt. 29 at *15). Pfizer argues that Brya remains bound by the release as to any claim that arises before 2003 (the date of execution), including any claim related to the calculation of his initial cash balance in 1997. (*Id.*) Brya, in response, challenges the validity of the agreement, stating "[t]he argument that all claims (including ERISA-based claims for future pension calculation errors) are barred by the release [is] overbroad or premature, as it does not specifically analyze whether ERISA

11

contains any statutory or public policy limitations on the enforceability of general releases as to rights under benefit plans, or on claims occurring well into future as [Brya] was only age 43-44."

Again, Brya's arguments fall short. Brya's 2003 Release Agreement clearly and unambiguously released the Miscalculation Claim, a singular act that occurred in 1997. Brya negotiated his Release Agreement and was compensated $427,230.16 in exchange for releasing, inter alia, "all claims . . . whether known or unknown" under "the Employee Retirement Income Security Act" that Brya "may have by reason of any facts or circumstances from the beginning of time to the date of this Release Agreement." Additionally, the Release Agreement contains other terms that demonstrate the parties' intent to be bound and Brya's understanding of the Release Agreement's terms. For example: (1) the language of the Release Agreement explained that Brya's claims under "the Employee Retirement Income Security Act," among others, are released in exchange for the $427,230.16 payment; (2) that Brya was advised to consult with an attorney prior to execution; and (3) that Brya "carefully read and reviewed this Release Agreement," "fully understand[s] all of its terms and conditions," to "execute and deliver this Release Agreement freely and voluntarily." *See Complaint,* pp. 52-55. Absent any proof of duress or any effort by Brya to tender back this payment, his miscalculation claim cannot survive since it runs afoul of the Release Agreement.

Finally, Brya's miscalculation claim is independently barred by his Release Agreement and cannot survive.

**CONCLUSION**

The Court dismisses Brya's claims since they are extinguished by ERISA's statute of repose, because his claims were litigated to conclusion in *Walker v. Monsanto*, and because Pfizer paid Brya $427,230.16 in severance benefits for a full release of any and all claims against Pfizer. For the foregoing reasons, Pfizer's Motion to Dismiss Brya's Amended Complaint [28] is granted, with prejudice.

**IT IS SO ORDERED.**

Date: 5/6/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge